IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J.S., III, a minor, by and through J.S., Jr. and M.S., his parents and next friends, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:12-cv-666-MEF |
| | ) | (WO -- Do Not Publish) |
| THE HOUSTON COUNTY BOARD OF EDUCATION, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a particularly sad case involving allegations of abuse against a disabled

elementary school student by his special education teacher and teacher's aide. Before the

Court is a Motion for Summary Judgment (Doc. #90) filed by Defendant The Houston

County Board of Education (the "Board") on March 28, 2014. After careful consideration

of the motion and the evidentiary submissions, and with the benefit of oral argument, the

Court finds that the Board's motion is due to be GRANTED.

## I. JURISDICTION AND VENUE

The Court has federal question jurisdiction over the claims in this case under 28

U.S.C. § 1331.[1] The parties do not claim that the Court lacks personal jurisdiction over them,

nor do they dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds

---

[1] The Court also had supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367. However, because the state law claims have already been dismissed from this action, as discussed herein, the only claims remaining are those brought under federal statutes pursuant to the Court's "federal question" subject matter jurisdiction.

adequate allegations supporting both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Court has carefully considered the submissions of the parties in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following material facts:

**A.     Relevant Facts**

**1.       The Parties**

J.S., III is a minor child with cerebral palsy and low cognitive functioning.  J.S., III is unable to walk or stand without assistance, and he uses either a wheelchair or rolling walker to ambulate.  J.S., III requires significant assistance with many daily life activities, including eating, toileting, dressing, bathing, and getting in and out of his wheelchair.  J.S., III can communicate orally, complete schoolwork, and express his needs to adults.

The Houston County Board of Education has jurisdiction over the provision of educational services in Houston County, Alabama (except for the City of Dothan).  The Board receives money from the federal government to ensure that schools in its system, including Wicksburg High School ("Wicksburg"), provide a free, appropriate public education ("FAPE") to handicapped children under the Individuals with Disabilities Education Act ("IDEA"), a federal statute that regulates the provision of public education to children with disabilities by state and local school systems that receive federal funding.  *See* 20 U.S.C. § 1412.  It is undisputed that J.S., III qualifies to receive a FAPE, including special education and related services, under the IDEA, and that he qualifies as a handicapped

individual for purposes of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act.

###    2.    J.S., III's Attendance at Wicksburg

J.S., III attends Wicksburg, a kindergarten through twelfth grade school within the Houston County school system.  During the relevant time period, Defendant Timothy Pitchford ("Pitchford") was the Superintendent for the Houston County school system and Defendant Cheryl Smith ("Smith") was the principal of Wicksburg.

J.S., III began attending kindergarten at Wicksburg in 2006.  In accordance with the IDEA, J.S., III received Individualized Education Plans ("IEP") outlining his educational goals for each of his school years at Wicksburg.  J.S., III is assigned an IEP "team," which consists of his parents, teachers, and school administrators, and they meet and develop his IEP.

Relevant to this case is J.S., III's 2011-2012 school year, which was his fourth grade year at Wicksburg.  Defendant Alicia Brown ("Brown") was J.S., III's special education teacher and Defendant Andrew Faircloth ("Faircloth") was his special education aide for the 2011-2012 school year.  J.S., III's regular education teacher for the 2011-2012 school year was Angie Boatwright ("Boatwright").  Brown and Faircloth were involved in developing J.S., III's IEP for the 2011-2012 school year, and both signed and were responsible for implementing his IEP for that school year.

J.S., III's IEP for the 2011-2012 school year specified that he was to spend 80% of his school day in the regular education environment with Boatwright and the other 20% in

3

the special education classroom with Brown.  J.S., III's IEP for the 2011-2012 school year did not provide that he was to spend any portion of his school day outside of Boatwright's and Brown's classrooms, except for lunch and physical education.

In the fall of 2011, Brown learned that Faircloth was taking J.S., III out of Boatwright's classroom and into the locker/weight room where the coaches were.  Faircloth removed J.S., III from Boatwright's classroom during these times because, according to Faircloth, J.S., III was distracting other students in the class and was getting distracted himself.[2]  Faircloth testified that the locker/weight room gave J.S., III a quiet place to complete his work and a private bathroom.  Some time in October 2011, Brown informed Smith that Faircloth was taking J.S., III out of Boatwright's classroom and into the locker/weight room in contravention of his IEP.  Smith told Brown she would take care of it.  Smith met with Faircloth shortly thereafter and instructed Faircloth not to take J.S., III to the locker/weight room anymore.  Faircloth indicated to Smith that he would comply with her instructions.  At some point in late 2011/early 2012, Brown learned that Faircloth was again taking J.S., III out of Boatwright's classroom and into the locker/weight room.  Brown informed Smith a second time that Faircloth was taking J.S., III to the locker/weight room when he should be in Boatwright's classroom, but Smith did not counsel Faircloth against this conduct a second time.[3]

---

[2]  J.S., III's IEP for the 2011-2012 school year, however, did not indicate that he exhibited any discipline or behavior problems, nor did it contain a behavior modification plan.

[3]  Smith disputes that Brown told her a second time about Faircloth taking J.S., III to the locker/weight room in contravention of his IEP, but since the Court is obligated at this stage of the

3.        The Events of March 2012

In March 2012, R.T., one of J.S., III's neighbors who was also in Boatwright's classroom, told her parents that she had witnessed Faircloth being mean to J.S., III. Specifically, R.T. claimed that (1) J.S., III had dropped his pencil and Faircloth refused to pick it up; (2) Faircloth, while sitting on a stool, kicked the wheel of J.S., III's wheelchair and told him to be quiet; and (3) Faircloth told J.S., III that he was getting the answers to his classwork all wrong and that it was "first grade work."  All of this occurred during the same class period on the same day.  That afternoon, M.S., J.S., III's mother, went to R.T.'s house and R.T. told M.S. what happened with Faircloth that day.  Later that same day, J.S., III's parents talked to J.S., III about these incidents, and J.S., III confirmed dropping his pencil and getting his classwork wrong but did not remember Faircloth kicking his wheelchair.

J.S., III's parents, M.S. and J.S., Jr., decided to place a hidden tape recorder on his wheelchair to get an idea of what a real school day was like for J.S., III.  J.S., III's parents obtained recordings from J.S., III's school days on Thursday, March 15, 2012, and Monday, March 19, 2012.  J.S., III's parents obtained these audio recordings without first notifying Wicksburg administrators or J.S., III's teachers of their intent to record them.

Unsurprisingly, there is much dispute over the general admissibility of the audio recordings and whether the Court should consider them at summary judgment.  The Court finds it unnecessary, however, to recount or rely on the specific contents of the recordings

---

proceedings to view the evidence in the light most favorable to Plaintiffs, the Court will credit Brown's version of events.

themselves to resolve the Board's summary judgment motion.[4]  It suffices to say that Plaintiffs allege that the audio recordings capture Brown and Faircloth addressing J.S., III in an abusive and inappropriate manner, that there are periods of "dead space" on the recordings, when no instruction is given or words are spoken to J.S., III, and that certain noises on the recordings are J.S., III being physically struck.

After listening to the recordings, M.S. contacted Wicksburg's special education coordinator, Denise Whitfield ("Whitfield"), by phone on the afternoon of Monday, March 19, 2012.  M.S. told Whitfield about the recordings and stated that she did not want J.S., III around either Brown or Faircloth, but she did not specifically request that they be removed from Wicksburg's campus entirely.  Whitfield offered to meet with M.S. the afternoon of March 19, 2012, but M.S. scheduled a meeting for the following morning.

On Tuesday, March 20, 2012, M.S. and J.S., Jr. met with Whitfield.[5]  Whitfield listened to the recordings during that meeting and followed along with an index that M.S. provided.[6]  That same day, Pitchford instructed Whitfield to assign J.S., III a new special education teacher and a new special education aide, which she did that same day.  On Wednesday, March 21, 2012, M.S. and J.S., Jr. met with J.S., III's IEP team, and they revised

---

[4] As a result, and in light of the Court's ruling on the Board's summary judgment motion, as discussed herein, the Board's Motion to Exclude the Expert Opinion and Testimony of Don Mosley (Doc. #88) and its Fed. R. Civ. P. 56(c)(2) Objection to Evidence (Doc. #86) are DENIED as moot.

[5] R.T.'s parents, T.T. and V.T., were also at this meeting.

[6] The recordings themselves last approximately 20 hours.

his 2011-2012 IEP to reflect the changes in his special education teacher and aide.  That same morning, Pitchford instructed Smith to place Faircloth and Brown on administrative leave, which she did.  J.S., III's parents were "satisfied" with the Board's handling of the matter at that point.

However, on Thursday, March 22, 2012, Pitchford listened to the recordings and decided to take Brown and Faircloth off administrative leave and to assign them to new positions in the school with instructions not to interact with J.S., III.  Brown and Faircloth returned to work at Wicksburg in new positions on Friday, March 23, 2012.  When M.S. learned of this, she withdrew J.S., III from Wicksburg and contacted the media.  That following Monday, March 26, 2012, Faircloth and Brown were placed back on administrative leave and neither returned to work at Wicksburg.[7]  J.S., III then returned to Wicksburg and completed his fourth grade year.

There is no dispute that J.S., III's parents received Wicksburg's Special Education Rights document on several occasions during J.S., III's attendance at Wicksburg, including on March 21, 2012, the day of the IEP meeting that revised J.S., III's special education teacher and aide assignments.  M.S. also testified to having read the document.  Still, J.S., III's parents never pursued a due process hearing under the IDEA through the Alabama Department of Education and never attempted to secure additional services for J.S., III in connection with the events made the basis of this lawsuit.  Plaintiffs instead claim they were

---

[7] Faircloth resigned from his position at Wicksburg, and Brown's teaching contract was not renewed at the end of the school year.

satisfied with the changes made to J.S., III's IEP and were not interested in additional remedies provided through the IDEA.

## B.    Procedural Background

On August 6, 2012, J.S., III, by and through his parents, J.S., Jr. and M.S. (collectively, "Plaintiffs") filed a complaint in this Court asserting various federal and state law claims against the Board, Faircloth, Brown, Pitchford, and Smith.  (Doc. #1.)  Plaintiffs amended their complaint on March 22, 2013, again asserting various federal and state law claims against the defendants.[8]  Plaintiffs seek compensatory and punitive damages.

Based upon the representations and agreements of the parties, Plaintiffs have dismissed all of their claims in this case except for Count I of the Amended Complaint, which asserts claims against the Board under the ADA and § 504 of the Rehabilitation Act.[9] (Doc. #40, Count I.)  Thus, this Memorandum Opinion and Order will address only the merits of those remaining claims against the sole remaining defendant.

## III.  STANDARD OF REVIEW

Summary judgment should be rendered "if the movant shows that there is no genuine

---

[8]  Specifically, Plaintiffs' Amended Complaint asserted the following claims against the following defendants: (1) claims under § 504 of the Rehabilitation Act and the ADA against the Board (Count I); (2) a substantive due process claim under 42 U.S.C. § 1983 against all Defendants (Count II); (3) another substantive due process claim under 42 U.S.C. § 1983 against Faircloth (Count III); (4) an equal protection claim under 42 U.S.C. § 1983 against all Defendants (Count IV); (5) claims for negligent, wanton, and willful conduct against Pitchford, Smith, Brown and Faircloth (Count V); (6) a claim for assault and battery against Faircloth (Count VI); and (7) a claim for false imprisonment against Faircloth (Count VII).  (*See* Doc. #40.)

[9]  *See* Docs. ## 78, 104, 117, and the Court's oral Order dated May 22, 2014.

dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine
disputes of material fact remain.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When faced with a properly supported motion for summary judgment, the non-moving
party must come forward with specific factual evidence, presenting more than mere
allegations.  *See Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  "A
nonmoving party, opposing a motion for summary judgment supported by affidavits [or other
relevant evidence] cannot meet the burden of coming forth with relevant competent evidence
by simply relying on legal conclusions or evidence which would be inadmissible at trial."
*Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) (alteration to original).

In ruling on a motion for summary judgment, the district court must construe the facts
and all reasonable inferences therefrom in the light most favorable to the non-moving party.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "[A]t the summary judgment
stage the judge's function is not himself to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for trial."  *Id.*  "Some degree of
factual dispute is expected, but to defeat a motion for summary judgment the factual dispute
must be material and genuine."  *D.N. ex rel. Newborn v. Sch. Bd. of Seminole Cnty., Fla.*, No.
6:07-cv-1494-ORL, 2009 WL 2178898, at *4 (M.D. Fla. July 21, 2009).  "That is, the factual
evidence must 'affect the outcome of the suit' and must be 'such that a reasonable jury could
return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).

## IV.  DISCUSSION

9

In the Board's motion for summary judgment and Plaintiffs' opposition thereto, the parties raise multiple grounds in support of and in opposition to the entry of summary judgment on Plaintiffs' ADA/§ 504 claims.  (Docs. ## 90, 91, 103, 104, 108.)  The Court, however, need only address the merits of just one of those proffered grounds–failure to exhaust administrative remedies–as it is dispositive of Plaintiffs' remaining ADA/§ 504 claims.

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  The IDEA does not prevent plaintiffs from bringing claims for relief under other federal laws protecting the rights of children with disabilities, such as the ADA or § 504.  *See M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006).  However, prior to bringing suits under other federal laws, the IDEA requires plaintiffs to exhaust their administrative remedies under § 1415(l) of the IDEA when those claims relate to the evaluation and education of a disabled child.  *See* 29 U.S.C. § 1415(l); *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 n.3 (11th Cir. 1998); *J.P. v. Cherokee Cnty. Bd. of Educ.*, 218 Fed. App'x 911 n.3 (11th Cir. 2007) ("The exhaustion requirement applies to claims asserting the rights of disabled children under not only the IDEA, but also the ADA, § 504 . . . , and the Constitution.") (citation omitted).

In this case, Plaintiffs do not contest that the IDEA's administrative exhaustion

requirements apply to their ADA/§ 504 claims.  (*See* Doc. #104, p. 23.)  Indeed, those claims allege that the Board failed to accommodate J.S., III's disabilities and that it discriminated against him based on his disabilities by, among other things, (1) failing to develop and to follow appropriate policies; (2) allowing unqualified personnel to teach J.S., III; (3) allowing corporal punishment to be administered to J.S., III; (4) failing to adequately supervise its special education instructors; (5) failing to adequately supervise its special education students; and (6) allowing J.S., III to be removed from his regular and special education classrooms for purposes unrelated to his education.  All of this conduct, according to Plaintiffs, "effectively excluded J.S., III from participating in, and receiving full access to, the benefits of the programs and activities of [the Board]."  (Doc. #40.)  Thus, because the crux of these allegations relate to the education and evaluation of J.S., III, a disabled child, Plaintiffs' ADA and § 504 claims are subject to the exhaustion requirements of the IDEA.

Having made that determination, the question now turns to whether Plaintiffs have adequately exhausted their administrative remedies under the IDEA.  The answer to that question is no.  In fact, Plaintiffs readily concede that they failed to file for a due process hearing or otherwise exhaust any administrative remedies under the IDEA with respect to the events made the basis of this lawsuit.  Normally, such an admission would end this dispute. However, in this case, Plaintiffs contend that their failure to exhaust should be excused because "an administrative proceeding under the IDEA would [have been] a waste of time and resources due to the fact that J.S., Jr. and M.S. feel that they have secured all the relief for J.S., III that the IDEA provides."  (Doc. #40, ¶ 11.)  Put differently, Plaintiffs argue that

pursuing an administrative remedy under the IDEA was futile, and, therefore, their ADA/§ 504 claims should be allowed to proceed.[10]

Plaintiffs are correct that "[e]xhaustion under the IDEA is not required where resorting to administrative remedies would prove futile . . . ." *Pope ex rel. Pope v. Cherokee Cnty. Bd. of Educ.*, 562 F. Supp. 2d 1371, 1376 (N.D. Ga. 2006) (citing *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996); *M.T.V.*, 446 F.3d at 1159).  However, "[t]he burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement," *M.T.V.*, 446 F.3d at 1159, and Plaintiffs have not met their burden of demonstrating that exhaustion is futile in this case.

The only reason offered by Plaintiffs for not pursuing a due process hearing in this case was that Plaintiffs were satisfied with the relief they obtained <u>before</u> they filed this lawsuit and were not interested in obtaining any additional relief under the IDEA.[11] However, the law is clear that simply being satisfied with the type of pre-lawsuit relief obtained does not render exhaustion futile.  *See N.B.*, 84 F.3d at 1379; *C.T. ex rel. Trevorrow*

---

[10] In addition to their futility argument, Plaintiffs also argued at summary judgment that their ADA/§ 504 claims were not barred by their failure to exhaust administrative remedies under the IDEA because the Board had waived a "failure to exhaust" defense.  However, at oral argument on May 22, 2014, the Court specifically found that the Board had raised "failure to exhaust" as an affirmative defense in its answer and had also pursued such a defense in discovery and, therefore, had not waived this defense.  Because the Court has already found that Plaintiffs' waiver argument lacks merit, the undersigned will not address it further herein.

[11] Notably, while the IDEA does provide various types of remedies, such as restitution for some parental expenses, compensatory education for students, and procedural remedies, it does not provide for aggrieved parties to obtain monetary relief.  *See Moore v. Chilton Cnty. Bd. of Educ.*, 936 F. Supp. 2d 1300, 1306 (M.D. Ala. 2013) ("[T]he IDEA does not provide a cause of action for tort-like relief.") (quoting *Ortega v. Bibb Cnty. Sch. Dist.*, 397 F.3d 1321, 1326 (11th Cir. 2005)).

*v. Necedah Area Sch. Dist.*, 39 Fed. App'x 420, 422 (7th Cir. 2002) (holding that parties' argument "that they are not interested in IDEA remedies . . . is insufficient to excuse the exhaustion requirement"); *Jennifer B. v. Chilton Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1313, 1322 (M.D. Ala. 2012); *Pope ex rel. Pope*, 562 F. Supp. 2d at 1376 (stating "Plaintiffs' claims and alleged injuries are educational based, and the fact that Plaintiffs contend that the current educational plan is sufficient does not render exhaustion futile" and that "the informal steps taken by Plaintiffs are not the statutory equivalent of exhaustion"). The ultimate dispute here concerns the Board's failure to sufficiently provide a public education to J.S., III and the adverse consequences of that failure. Requiring Plaintiffs to proceed under the IDEA's administrative process in such a case is not futile. *See Pope ex rel. Pope*, 562 F. Supp. 2d at 1376 (citing cases).

This result may seem somewhat nonsensical when, as here, there is no dispute that, after the events of March 2012 came to light, Plaintiffs and the Board worked cooperatively and diligently to provide J.S., III with new or additional educational services, to revise his IEP accordingly, and to prepare him for his upcoming fifth grade year. One could ask why then, in cases like this, when the parents voluntarily work with the educational providers outside the due-process administrative framework and are satisfied with the remedies provided to their disabled child, are they still required to go through the motions of a due-process hearing before they can pursue their claims in federal court? The simple answer is the "[p]arties cannot know if adequate relief is unavailable unless they ask for it and go through the process." *C.T. ex rel Trevorrow*, 39 Fed. App'x at 423. Indeed, as the

undisputed evidence in this case has shown, J.S., III could have obtained additional services and benefits other than those currently provided to him, such as counseling, if he had pursued a due-process hearing.  Finally, as the Eleventh Circuit has explained, state administrative agencies, like the Alabama Department of Education, are better equipped and possess the expertise necessary to address these types of situations; therefore, they should be given the first opportunity to correct the type of educational errors presented here, as opposed to a federal court.  *See, e.g., Jennifer B.*, 891 F. Supp. 2d at 1322 (citing *Ass'n for Retarded Citizens of Ala., Inc. v. Teague*, 830 F.2d 158, 160 (11th Cir. 1987)).  Accordingly, the Board's motion for summary judgment is due to be GRANTED, and Plaintiffs' ADA/§ 504 claims are due to be DISMISSED WITHOUT PREJUDICE for failure to exhaust their administrative remedies.

## V.  CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1.     The Houston County Board of Education's Motion for Summary Judgment (Doc. #90) is GRANTED, and Plaintiffs' ADA and § 504 claims as alleged in Count I of the amended complaint are DISMISSED WITHOUT PREJUDICE.  This ruling resolves all pending claims in this action, and the Clerk of Court is DIRECTED to close the file.

2.     The Houston County Board of Education's Motion to Exclude the Expert Opinion and Testimony of Don Mosley (Doc. #88) and Fed. R. Civ. P. 56(c)(2) Objection to Evidence (Doc. #86) are DENIED as MOOT.

3.      The pretrial hearing and trial in this matter are CANCELLED.

A final judgment consistent with this Memorandum Opinion and Order is forthcoming.

DONE this the 8th day of July, 2014.


_____ /s/ Mark E. Fuller _____
UNITED STATES DISTRICT JUDGE